Shaw, C. J.
The bill in this case was filed by a committee of the church, setting forth that there is a large fund, invested in the stock of two banks named, which fund has been formed and devoted to and for pious and charitable uses, to be distributed and administered according to the order and direction of said church and then members forever; that the same was created partly by voluntary donations for -the purpose, and partly by contributions at the celebration of the Lord’s Supper, for the benefit of the poor, &c.; that it has been invested by consent of the church, in the name of some individual member, chosen to be the treasurer, to invest in his individual name, as trustee and in trust for the said church; that the same was invested in the stock of the two banks, in the name of said May, as treasurer of said church; It avers that said May threatens to convey to said Pierpont, and said Pierpont is willing to receive the same, without consideration, contrary to right and equity; and that the complainants have requested. and directed said May to desist from such pay ment.
It charges that the same has not been voted or authorized at any regular meeting of said church; that if any such meeting was held, it was not composed of the members of the church, but of other persons not members, and not authorized to vote, and that these proceedings are contrary to equity.
It requires answers, and prays that the stock and funds may be decreed to be invested in the name of a treasurer *183 chosen by the church, from time to time, for that purpose ; or, in the name of the deacons and their successors, as a body politic, in trust for the church ; and that the said May may be restrained from transferring said stocks, and the banks from permitting such transfer, and the said Pierpont from receiving a transfer thereof; and that the said May be ordered and enjoined to hold the same in trust for the church, or to be transferred as they may direct, and for general relief.
To this bill the respondents, May and Pierpont, have filed a plea, averring that the said May never held the said shares as trustee, or in trust for the Hollis street church, but that he held the same as treasurer of said Hollis street church, duly chosen as an officer thereof, in his official capacity. This has been set down by the complainants for hearing, and the question is upon the sufficiency of this plea to bar their suit.
We have no occasion here to consider the question, whether Weld, Mayo and Weld, as a committee of the church, can bring this suit in the name and behoof of the church.
In certain cases, the statute, following the earlier statute of 1785, c. 51, § 1, authorizes the commencement and prosecution of any suits, in the name of the church, against the deacons or other officers, by a committee. Rev. Sts. c. 20, § 44.
Whether the present case is within the statute, we have no occasion to consider now, because the right of the committee of the church thus to proceed is not drawn in question by this plea.
We suppose the purpose of a plea in equity is, to set forth some matter of fact, in a form capable of being put in issue and tried, which fact does not appear in the bill, the existence of which shows that the complainant has no title to recover, even though the other matters in the bill are true, as stated and set forth.
We say “ not appearing” in the bill; for if any matter of fact stated in the bill, shows that the complainant has no title to recover in equity, he states himself out of court; the bill would be bad on demurrer, and no plea would be necessary.
The only matter stated in the plea, not appearing in the bill is, that the said May never held said shares, as trustee for *184 Hollis street church, but that he held them as treasurer, as an officer, and in his official capacity.
The fact that he invested them in his own name, describing himself as treasurer of the church, is averred in the bill, and must be taken to be true, in considering the plea.
The fact relied on, then, is, that having invested the money in his own name, describing himself as treasurer of said church, and having taken certificates in the same form, he is either not chargeable at all as trustee, or not as trustee for these complainants, on the grounds stated. It is in effect, therefore, a plea to the equity jurisdiction, denying that any trust is set out, over which this court has equity jurisdiction or for breach of which it can afford any relief.
In order to estimate the value and sufficiency of this plea, it is necessary to consider what are the legal character, the rights, forms and duties of a congregational church, and the officers and persons connected with it. As these depend upon general laws, courts will take notice of them, without being specially pleaded or proved. The existence of a church being established, the consequences are attached by the law.
The character, powers and duties of churches gathered within the various congregational parishes and religious societies in this commonwealth, have been definitely known and understood from the earliest period of its existence. Indeed, the main object of the first settlers of the country, in their emigration hither, was to manage their religious affairs in their own way. The earliest thing they established was a congregation and a congregational church. The legal character of the church was well understood. It was a body of persons, members of a congregational or other religious society, established for the promotion and support of public worship, which body was set apart from the rest of the society, for peculiar religious observances, for the celebration of the Lord’s Supper, and for mutual edification. They were usually formed and regulated by a covenant, or articles of agreement, which each separate church formed for itself, sometimes with the advice of other churches, by which they mutually stipulated to assist each other, by advice and counsel, in pursuing a *185 Christian course of life, to submit to proper censure and discipline for any deviation therefrom, and, generally, to promote the essential growth and welfare of each other. They might consist of all or only a portion of the adult members of the congregation with which they were connected. The earliest statutes of the colony recognize the churches, not as corporations or even as quasi corporations, but each as an aggregate body of Christians, in each religious society, collected together and united by covenant and by usage, and recognized by law; and these statutes provide, that their rights and usages shall be respected, and that they shall be encouraged in the exercise and maintenance of the same. Charters and General Laws of the Colony and Province of Massachusetts Bay, 100; Baker v. Fales, 16 Mass. 488; Stebbins v. Jennings, 10 Pick. 172; Sawyer v. Baldwin, 11 Pick. 492; Page v. Crosby, 24 Pick. 24.
It is naturally incident to such a body, that some expenses should be incurred by each church, such as to provide in some measure for the poor members of their own body, to procure the elements for the observance of the Lord’s Supper, to pay the expenses of sending ministers and delegates to sister churches, and the like. For all these purposes, it was necessary that money should be provided and held in such a manner as to be conveniently appropriated to those charitable, or otherwise laudable, and appropriate purposes. In order, then, to accomplish this object without creating them a corporation, and to enable a church to have the control and disposal of property, the act of 1754 was passed, which has been substantially renewed from time to time, by which the deacons of each church were so far made a body politic as to take and hold, in succession, all funds that might be raised by voluntary contribution or otherwise, designed for the use of the church. The statute provisions on this subject are embodied in the revised statutes, c. 20, § 39. “ The deacons, churchwardens, or other similar officers of all churches or religious societies, if citizens of the United States, shall be deemed bodies corporate, for the purpose of taking and holding, in succession, all grants and donations, whether of real or personal *186 estate, made either to them and their successors, or to then respective churches, or to the poor of their churches.”
Now these are incidents in law to a church. If grants 01 donations are intended for the church, whether the gift be in form to the poor of the church or to the church itself, then the deacons are a body politic to take and hold the same. These consequences are considered as necessarily following from the fact of the existence of a church. It was so held in the case of Sawyer v. Baldwin, 11 Pick. 492. In that case the question was, whether a certain manuscript book, which had been kept by a deceased pastor of a church, was a private memorandum of his own, or the book of records of the church over which he presided; and if the latter, to whom it belonged. It appeared that the book was in the form of a record, that the deceased had been the proper officer of that church to keep such a record, and that no other record was kept. And the court held, that it was the book of records of the church, that the possession by the pastor, the proper officer to keep it, was evidence that it was the property of the church, and that, therefore, and by force of th.e statute, the legal property in the book was in the deacons of that church, and, as the right of possession follows the right of property, they might' recover the possession of it.
Deacons hold ex officiis and not otherwise. In case of a change of the deacons by death, removal, or otherwise, those who go out cease to hold the property of the church, and those who come in become forthwith invested with the right of property, and primd facie with the right of possession.
In the case of Page v. Crosby, 24 Pick. 211, where one set of deacons was chosen, and another removed, it was held that the property of the predecessors vested at once, by law, in their successors.
But it is urged that a church may hold property to the value of two thousand dollars a year, and upon this doctrine all this property passes to the deacons by the mere force of Jaw, and it cannot be intended that so large an amount of property shall be thus loosely dealt with. And it is asked how can a church have regular officers, and proceed at its *187 meetings and in its affairs generally, in an orderly way, if it is not a corporation ?
The answer is, that although a church is an aggregate body of individuals, yet it is an institution of a public and solemn nature, generally understood; its usages and courses of proceeding are well known, recognized, and confirmed by law; it is perfectly open to public observation; its objects are laudable, and the community have a deep interest in them; and when a deacon is chosen, he is chosen according to known regulations and usage. And, therefore, whether he is duly chosen or legally removed, must always be a matter of fact, to be tried upon evidence as other matters of fact are tried. When legally chosen, the law vests in him the powers necessary to accomplish its purpose, that of taking and holding property for a known aggregate body not incorporated; and when he legally ceases to be such deacon, by resignation or removal, he is, ipso facto, divested of those powers, and of the property taken under them. These points were considered in the case of Baker v. Fales, 16 Mass. 488. There it was held to be essential to the legal character of a church, that it be connected with some regularly constituted religious society, and that a church cannot subsist without some religious community to which it is attached. From this view it plainly follows, that the church and the society are inseparably united, and that a majority of the church, by leaving the society, cease to be members of that church, and the minority who remain constitute the church; and that, when they removed the deacons, the deacons ceased to hold the office of deacons of that church, and thereby ceased to hold the property of the church.
The same doctrine is maintained in the case of Stebbins v. Jennings, 10 Pick. 172. It was argued, in that case, that a church might be deemed a corporation, or at least a quasi corporation, for the purpose of holding property; but the court held, that it could be deemed neither the one nor the other. The law had provided how a church should hold property, and that was by its deacons. This, as before stated, was the doctrine also in Sawyer v. Baldwin, 11 Pick. 492. These *188 questions were again discussed and decided as before, in the case of Page v. Crosby, in regard to the congregational religious society in Bedford.
To apply these principles to the case at bar, the church is neither a corporation nor a quasi corporation, but a body of persons associated together for certain objects under the law— an aggregate body of individuals associated together, in connection with a religious society. The term “religious society ” may, with propriety, be applied in a certain sense to a church, as that of “ religious association,” “ religious union,” or the like; yet, in the true sense here, and as commonly used in our law, it is synonymous with “ parish,” “ precinct,” &c., and designates an incorporated society, created and maintained for support and maintenance of public worship. Under this head, towns were formerly included, when a town exercised all the functions both of a municipal and parochial corporation, some of which, probably, still so remain. In this, its legal sense, a church is not a religious society. It is a separate body, formed within such parish or religious society, whose rights and usages are well known, and, to a great extent, defined and established by law.
The respondent May alleges, that he was the treasurer of the church in Hollis street, and, in taking and investing these funds, acted in his official capacity as such treasurer; and that, therefore, the relation of trustee and cestui que trust does not exist as between himself and the church. But in strictness, the deacons are the trustees of the property of the church ; the legal estate and interest is vested in them, and any one who has the possession or administration of it, must be deemed to have it by their express or implied authority, by whatever title he may be called. The church, by electing a person as a “ treasurer,” which implies that he is to be the keeper of their money, may, by necessary implication, have shown their consent, and perhaps their wish, that their money might be placed in his custody, and it would be a good justification to the deacons in not keeping possession of it, according to their primd facie right. But this is the extent of such *189 implied authority; it does not go to the disposition, appropriation, or investment.
Such, then, is the relation subsisting between the church and Mr. May, their treasurer; he has a good authority to take and hold their money, to their use, subject to be appropriated and disposed of as they should from time to time direct. Under these circumstances, the court are of opinion, that the relation of trustee and cestui que trust did subsist oetween these parties.
The plea assumes that, because he is a treasurer, therefore he cannot be deemed a trustee; but it appears to us that this is a non sequitur, and that, in certain eases, he may be both a treasurer and trustee, and a trustee because he is a treasurer. Whether a treasurer be a trustee or not, appears to us to depend on the question, what body or society he is chosen treasurer of. He may be chosen treasurer of a county, town, parish, or corporation, where his duties and his accountability are prescribed by law; it may be justly held, that he is not a trustee for the individuals of such county, town, parish, or corporation, though interested in the proper administration of the funds; nor could they maintain a suit in equity against him, because he is not accountable to them, and is not a trustee for them.
But suppose a few persons assemble and form a voluntary society, to raise money to be appropriated to some specific object, and they choose one of their number to be their treasurer; the meaning of the word “ treasurer ” would imply that he holds their funds for their use, to be appropriated according to their order. Would he not be a trustee for them, and accountable to them, and liable to a suit in their own names, either at law or in equity, according as the one or the other should be the appropriate remedy ? The difference between that and the present case is, that, although neither is a corporation, yet a church is an aggregate body, so far vested with legal powers that they may sue by a committee, and are not bound to sue in the names of all the members.
From this view it follows, that, when one is chosen treas *190 urer, but when such office is not established by law, so that its character, duties, and responsibilities are not created and defined by law, we must seek in the general law, to ascertain what are his rights and powers, his duties and responsibilities, and the remedies which others may have against him. If these make him a trustee, then he may be chargeable as trustee, though chosen a treasurer.
We have already stated that, until the deacons claim the funds, the treasurer holds them for the use of the church. Suppose any person should give or send money or .other property to the treasurer of the church, would he not hold it as trustee ?
It was strongly urged, in the argument, that the case of Hale v. Cushman, 6 Met. 425, was a decisive authority against this suit. But it seems very clear that there was no relation of trustee and cestui que trust in that case. It was a suit brought by some sixty or seventy of the inhabitants of Ber-nardston against the treasurer of the town and a majority of the selectmen, to restrain them from paying over money, under a vote of the town, for the defence of an action brought against the said selectmen by a voter whose vote they had refused at an election. And it was held, that the treasurer of the town was not a trustee for the individual complainants, but for the town in its corporate capacity, with duties and rights as such treasurer, defined and regulated by law. Jurisdiction was there denied, because no trust was set forth in which the complainants had an interest, and for a violation of which they could sue in equity.
Looking at the church in this case as a body of individuals, they do not hold property to their own use, but their deacons are invested with powers to supply such deficiency in the legal constitution of a church.
It is not necessary to decide, in this case, whether a bill in equity would lie in a proper case, against the deacons of a church. Their duties are, to some extent, defined by law; but, in ease they violate their duties, we are not prepared to say that a bill in equity would not lie against them ; as if, for example, they failed to apply the funds of the church as their *191 duty demanded of them. The statute provision, that a committee of their church might sue them, was made before equity jurisdiction was given to this court; still, that statute was made to enlarge and extend remedies, for violation of rights which before existed. But here, though we know that Mr. May, the defendant, is called Deacon May, yet he does not say, in his plea, that he claims to hold the funds in question as deacon, but he says he held the funds invested as treasurer. Still, as his office of treasurer is one not expressly created by law, but a mere agency, that mode of investment can only be deemed an intimation that he held the property not in his own right, but in that of others.
But it is argued that the phrase in the revised statutes, c. 20, § 39, which is found also in the statute of 1754, and in that of 1785, c. 51, “ or other similar officers,” is meant to include treasurers. But we think this a misconstruction. It means' officers in churches otherwise constituted, of similar character and with corresponding functions with those of deacons in congregational churches, and churchwardens of episcopal churches. It was intended for the benefit of the methodists, the baptists, the Christians, or any of the other sects, in order that their officers, under whatever name, who exercised functions corresponding to those of deacons and churchwardens, might take and hold property for their respective churches. Other officers, not of a character similar to that of deacons, must hold simply as trustees. Therefore, when Mr. May says he invested the stocks in the name of Samuel May, as treasurer, it means that he held himself out to the world, not as the beneficial owner of the funds invested, but as one holding for others. And if he held them under the name of a “ treasurer,” “ keeper,” or “ receiver,” or other similar designation, he was still to be deemed a trustee for others. The plea here is not a plea of any new, distinct, and substantive facts ; but simply that he is a treasurer and not a trustee; it depends on all the uncontroverted facts stated in the bill. But if, taking those facts together, he is a treasurer and a trustee at the same time, as we think he is, this ground of defence fails. The plea is therefore overruled.